**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

Nos. 15-2470, 15-3141
———

SECRETARY UNITED STATES DEPARTMENT OF LABOR

v.

JOHN J. KORESKO, V.; JEANNE D. BONNEY;
PENN-MONT BENEFIT SERVICES, INC.;
KORESKO & ASSOCIATES, P.C.; KORESKO LAW FIRM, P.C.;
PENN PUBLIC TRUST; REGIONAL EMPLOYERS ASSURANCE LEAGUES
VOLUNTARY EMPLOYEES BENEFICIARY ASSOCIATION TRUST;
SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST

JOHN J. KORESKO, V,
Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-09-cv-00988)
District Judge: Honorable Mary A. McLaughlin

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2016

Before: CHAGARES, RESTREPO, and VAN ANTWERPEN, <u>Circuit Judges</u>

(Filed: April 5, 2016)
————

OPINION*
————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VAN ANTWERPEN, Circuit Judge

John J. Koresko, V ("Koresko") appeals several rulings from the U.S. District Court for the Eastern District of Pennsylvania regarding Appellee Secretary of Labor's ("Secretary") enforcement action against Koresko and related entities for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). The District Court found that Koresko breached fiduciary duties he owed to employee welfare benefit plans under ERISA. We will affirm the following District Court rulings: (1) the August 3, 2012 order granting partial summary judgment in favor of the Secretary; (2) the September 16, 2013 order appointing a temporary independent fiduciary; (3) the February 6, 2015 opinion imposing liability on Koresko for breach of fiduciary duty; (4) the March 13, 2015 order imposing final judgment on Koresko; and (5) the May 13, 2015 order denying Koresko's motion for a new trial.[1] We will also dismiss Koresko's appeal of the Court's August 4, 2015 order appointing a permanent independent fiduciary because we lack jurisdiction to review it.

## I.     INTRODUCTION

Since we write only for the benefit of the parties, we set forth only those facts necessary to inform our analysis.[2] This appeal arises out of a suit brought in March 2009

---

[1] Koresko's arguments on appeal do not discuss each of these rulings. To the extent Koresko has not discussed why a particular ruling was improper, we deem him to have abandoned and waived the issue on appeal. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

by the Secretary against Koresko and several entities he controls in connection with a multi-employer employee death benefit program. (App. 1184–88). Koresko and his brother Lawrence Koresko ran an "unincorporated association of unrelated employers called the Regional Employers Assurance Leagues" ("REAL," "League"), which offered employee welfare benefit plans, including death benefit plans, to employers through the REAL Voluntary Employees' Beneficiary Association ("REAL VEBA") Trust. (*Id.* at 8).[3] Participating employers executed an adoption agreement in order to join the League and subscribe to the trusts. (*Id.* at 9); *see, e.g.*, (*id.* at 465).[4]  In joining the League, employers agreed to be bound by the governing documents including the Master Trust Agreement, Plan Document, and their individual adoption agreement. (*Id.* at 9–10). PennMont Benefit Services, Inc. ("PennMont") was the administrator of the plans; Koresko is the president and CEO of PennMont. (*Id.* at 11, 138). Employers who joined the League could select the type and amount of benefits to offer and set eligibility requirements for employees. (*Id.* at 9). Eligible employees of adopting employers could

---

[2] The District Court conducted an extensive review of this case in granting the Secretary partial summary judgment and in its opinion following a bench trial against Koresko. (App. 8–22, 97–251).

[3] This case also involves the Single Employer Welfare Benefit Plan Trust ("SEWBPT"), which Appellant acknowledges is essentially identical to the REAL VEBA Trust. (App. 139); (Appellant's Br. 7 n.1) ("The operative documents of the Trusts are essentially identical, as are their structural arrangements."). Our explanation of the REAL VEBA Trust applies to the SEWBPT as well. The REAL VEBA Trust and SEWBPT are referred to collectively as "trusts."

[4] The participating employers' individual employee welfare benefit plans are referred to herein as "plans." The employers who joined the League and executed adoption agreements are referred to as "adopting employers."

then participate in the benefit program. (*Id.*). The trusts consisted of employer contributions, which the adoption agreements require, and life insurance policies taken out on the lives of participating employees to fund the benefits. (*Id.*). Benefits were then paid according the adopting employers' individual adoption agreement and the governing documents for the trust. (*Id.* at 9–10).

The suit brought by the Secretary was against Koresko, several companies he owned, the trusts, an employee of Koresko, and the trustees. (*Id.* at 1185–88). The Secretary alleged a breach of fiduciary duties with respect to many individual employee welfare benefit plans. (*Id.* at 1195–202). In August 2012, the U.S. District Court for the Eastern District of Pennsylvania (McLaughlin, J.), granted the Secretary partial summary judgment with respect to three specific plans. (*Id.* at 81–82). The Court proceeded to remove Koresko from his positions of authority with respect to the trusts, and appointed a temporary independent fiduciary to administer the plans and trusts in September 2013. (*Id.* at 1448–455). The District Court then conducted a three-day bench trial that concerned additional employee welfare benefit plans. This resulted in a memorandum opinion in February 2015 that detailed Koresko's violations of ERISA. (*Id.* at 97–322).[5] The Court found that at least 419 employee welfare benefit plans were ERISA-covered plans. (*Id.* at 156, 257).[6] The Court entered judgment in accordance with this opinion in

---

[5] The nature of Koresko's breach of fiduciary duties is not at issue on appeal, therefore we will not discuss the extent of his ERISA violations.

[6] As discussed *infra*, under federal regulations, employee welfare benefit plans in which there are no non-owner employees are exempt from ERISA coverage. 29 C.F.R. § 2510.3-3(b). Therefore, this calculation is based on the number of plans the District Court

4

March 2015, ordering the permanent removal of the fiduciaries. (*Id.* at 323–28). The Court also ordered Koresko to pay restitution and disgorgement of the remaining diverted assets. (*Id.* at 323). Koresko's motion for a new trial was denied by the Court in May 2015. (*Id.* at 329). Koresko timely appealed. (*Id.* at 1).[7]

After Koresko appealed the Court's March 2015 order, the Court issued an order on August 4, 2015 appointing a permanent independent fiduciary. (*Id.* at 1621–22). In addition to appointing a permanent independent fiduciary, the Court required that Koresko bear the costs of the fiduciary's appointment. (*Id.* at 1631). The Court stated: "[h]ad the Koresko Defendants complied with their fiduciary duties, there would be no need to appoint an Independent Trustee in this case." (*Id.*). The costs of the appointment would initially be paid from trust assets. (*Id.*). The Court retained jurisdiction in order to enforce the order and explained that it would "issue a separate order specifying the total amount the Koresko Defendants are liable to the Plans to restore on account of this appointment." (*Id.*). Appellant also appeals this order. (*Id.* at 1616).

## II.    AFFIRMANCE DISCUSSION[8]

---

found that included at least one non-owner employee. (App. 156). The Court concluded that the plans at issue in this case are employee welfare benefit plans governed by ERISA and that Koresko was a fiduciary with respect to these plans. (*Id.* at 99–100).

[7] Koresko is the only party appealing.

[8] The District Court had jurisdiction under 29 U.S.C. § 1132(e)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. "Our review of the district court's interpretation of ERISA is plenary, while the district court's findings of fact are reviewed for clear error." *Mack Boring & Parts v. Meeker Sharkey Moffitt, Actuarial Consultants of N.J.*, 930 F.2d 267, 270 (3d Cir. 1991) (citations omitted).

Appellant argues on appeal that the District Court erred by finding that: (A) trust assets are plan assets for purposes of ERISA application; (B) a 2009 amendment to the Plan Document eliminating non-owner employees was invalid; (C) Koresko was not entitled to an advancement of defense costs; and (D) Koresko must restore the alleged depletion of assets of the trusts. We reject all of these arguments for the following reasons.

### A.     Trust assets are ERISA plan assets

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 220 (3d Cir. 2010) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)) (internal quotation marks omitted). ERISA applies to "employee benefit plans," which may be either employee pension benefit plans or employee welfare benefit plans. 29 U.S.C. § 1002(3). This case involves employee welfare benefit plans, which the statute defines as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of . . . death . . . .

*Id.* § 1002(1). The District Court concluded that the master REAL VEBA plan, a multi-employer program, is not a "plan" under ERISA. (App. 26). However, the Court found

6

that individual employer-level plans joining the master REAL VEBA plan are ERISA plans. (*Id.* at 27). [9]

We must decide whether the employer-level plans are ERISA plans in order to determine whether or not Koresko owed fiduciary duties to these plans. ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). The statute provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). In other words, a person may be a fiduciary with respect to a plan even if the person is not named as a fiduciary in plan documents, "to the extent . . . he . . . exercises any authority or control respecting management or disposition of its assets." *Sec'y of Labor v. Doyle*, 675 F.3d 187, 200 (3d Cir. 2012) (alterations in original) (quoting 29 U.S.C. § 1002(21)(A)(i)) (internal quotation marks omitted). We recognize the difference between the two clauses set forth above in 29 U.S.C. § 1002(21)(A)(i), "that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets." *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (quoting *Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 273 (3d Cir. 2001)) (hereinafter *Bricklayers*). We have emphasized

---

[9] The Court also found that the plans of adopting employers who joined the SEWBPT were ERISA plans. (App. 252).

this distinction, "[n]oting that the 'statute treats control over the cash differently from control over administration' . . . [and] that 'any control over disposition of plan money makes the person who has the control a fiduciary.'" *Bricklayers*, 237 F.3d at 273 (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997)).

The Secretary has primarily relied on the second clause of § 1002(21)(A)(i) to argue that Koresko is a fiduciary, even though he lacked discretionary authority or control over management of the plans and he was not named a fiduciary in the plan documents. The District Court found, and the parties do not dispute, that Koresko exercised control over the disposition of the assets of the individual employer-level plans. (App. 61–67, 269–70). As explained above, this basis for attaching fiduciary status is authority or control over "plan assets," therefore, fiduciary status attaches to Koresko to the extent of the employer-level ERISA plans' assets. *See Doyle*, 675 F.3d at 200. In order to find that Koresko violated his fiduciary duties in this case, we must determine that the plans' assets include the assets in the master trusts.

### 1. Determination of plan assets

"The term 'plan assets' is not comprehensively defined in ERISA or in the Secretary's regulations." *Id.* at 203. ERISA provides that "'plan assets' means plan assets as defined by such regulations as the Secretary may prescribe." 29 U.S.C. § 1002(42). These regulations "define the scope of 'plan assets' in two specific contexts: (1) where an employee benefit plan invests assets by purchasing shares in a company, 29 C.F.R. § 2510.3–101, and (2) where contributions to a plan are withheld by an employer from employees' wages, 29 C.F.R. § 2510.3–102." *Doyle*, 675 F.3d at 203. The second

8

regulation does not apply in this case, and while the District Court relied primarily on property rights in its analysis, the Court's conclusion "found support" in the first regulation, discussed *infra*. (App. 59–60, 264–65).

The District Court relied on "ordinary notions of property rights under non-ERISA law" to determine plan assets, an approach we set forth in *Secretary of Labor v. Doyle*. 675 F.3d at 203; (App. 50, 263); *see In Re Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005) (approving this approach by explaining that "the definition of 'asset,' . . . is that the person or entity holding the asset has an ownership interest in a given thing, whether tangible or intangible"). We explained that this approach is consistent with guidance provided by the Secretary that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. In general, the assets of a welfare plan would include any property, tangible or intangible, in which the plan has a beneficial ownership interest." *Doyle*, 675 F.3d at 203 (quoting Department of Labor, Advisory Op. No. 93–14A, 1993 WL 188473, at *4 (May 5, 1993)) (internal quotation marks omitted). The Eighth Circuit has expanded on the term "beneficial interest" by approving the Secretary's explanation set forth in a Department of Labor opinion letter:

> Whether a plan has acquired a beneficial interest in particular funds depends on "whether the plan sponsor expresses an intent to grant such a beneficial interest or has acted or made representations sufficient to lead participants and beneficiaries of the plan to reasonably believe that such funds separately secure the promised benefits or are otherwise plan assets."

*Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007) (quoting Department of Labor, Advisory Op. No. 94–31A, 1994 WL 501646, at *3 (Sept.

9, 1994)). We agree with the Eighth Circuit that this agency interpretation is entitled to some deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

In relying on ordinary notions of property rights to determine whether the plan has acquired a beneficial interest in particular funds, we begin by "consult[ing] the documents establishing and governing the plan." *Doyle*, 675 F.3d at 204. "[T]hen, in light of these documents, [we] consult contracts to which the plan is a party or other documents establishing the rights of the plan." *Id.* The District Court properly considered the Plan Document, the Master Trust Agreement, and applicable adoption agreements, which established and governed the individual employer-level plans when they joined the trusts. (App. 51–52, 264). These documents make clear that legal title to the trust is vested in the trustee only. For example, the Master Trust Agreement to the REAL VEBA trust provides:

> Title to the Trust Fund shall be vested in and remain exclusively in the Trustee and neither the Adopting Employer, Advisory Committee Plan Administrator, nor any employee, or his or her decedents or beneficiaries shall have any right, title or interest therein or thereto. Participation in the Plan and this Trust shall not give any employee, beneficiary or any other Person, any right or interest in the Plan or this Trust other than as herein provided.

(*Id.* at 1117). Neither the plans, the employers, nor the beneficiaries may claim legal title over the trust property, which consists of the employer contributions and life insurance contract proceeds.

This is where Appellant disagrees with the District Court's approach, as Appellant contends "the question was—or should have been—answered: the Trustee owns the assets in the Trust and the employer-level plans have *no interest* therein." (Appellant's

10

Br. 16). The Court, however, found that "the inquiry does not end there," and continued to find that "[a]lthough the documents do not confer legal title to the REAL VEBA trust assets on the Plans, they manifest an intent to confer a beneficial interest on participating plans." (App. 52). As explained above, welfare plan assets include property in which the plan has a beneficial ownership interest. *Doyle*, 675 F.3d at 203. The District Court found that "the assets in the REAL VEBA Trust are held in trust for the exclusive benefit of the participating employees and beneficiaries of employers that adopt the REAL VEBA benefit arrangement." (App. 53–54); *see also* (*id.* at 265) ("Because the 419 covered plans have an undivided beneficial interest, that means they have an interest in all of the assets in the REAL VEBA or SEWBP Trust . . . .").

We agree with the District Court and rely on ordinary notions of property and trust law. While trustees have legal title and a non-beneficial interest in trust assets, beneficiaries of a trust have an equitable or beneficial interest. "A *trust* may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another." Amy Morris Hess, George Gleason Bogert & George Taylor Bogert, Bogert's Trusts and Trustees, The Law Of Trusts and Trustees § 1 (2015); *see In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) ("[T]he classic definition of a trust [is that] the beneficiary has an equitable interest in the trust property while legal title is vested in the trustee."); Restatement (Third) of Trusts § 42 (explaining that the trustee has a "non-beneficial interest" in the trust assets). The governing documents make clear that employees as plan participants are to be considered beneficiaries under the master plan. The Master Trust

11

Agreement for the REAL VEBA trust provides that "[t]he Trustee will hold the funds contributed to it by the League in a fiduciary capacity for the benefit of all Employees covered under the Plan." (App. 1113); *see* (*id.* at 1127) (similar language in the Master Trust Agreement for the SEWBPT). The Master Trust Agreement continues:

> This trust is established . . . for the purpose of receiving contributions of the Adopting Employers and their employees to provide . . . benefits to the employees and beneficiaries hereunder or payment of insurance premiums or making such other similar payments pursuant to the terms of the Plan. All contributions, and all assets and earnings of the Trust are solely the net earnings of the Trust and shall not in any manner whatsoever inure to the benefit of any person other than a Person designated as an employee or beneficiary of an Adopting Employer under the terms of the Plan.

(*Id.* at 1115); *see* (*id.* at 1128) (similar language in the Master Trust Agreement of the SEWBPT); *see also* (*id.* at 54) (providing other examples in the plan documents "that the trust corpus and income shall be used for the exclusive benefit of participating employees and their beneficiaries"). Furthermore, the qualification in the Master Trust Agreement for the REAL VEBA Trust, that "[p]articipation in the Plan . . . shall not give any employee, beneficiary or any other Person, any right or interest in the Plan . . . *other than as herein provided*" allows these interests to exist. (*Id.* at 1117) (emphasis added). Therefore, we agree that the employees and plan participants have a beneficial interest in the trusts.

Appellant argues that while employer-plan participants may be beneficiaries under the trust, the employer-level plans themselves are distinct from plan participants and have no interest, beneficial or otherwise, in the trust. (Appellant's Br. 17–18); (quoting *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 56 (1st Cir. 2014)) ("It is the

12

beneficiary, not the plan itself, who has acquired an ownership interest in the assets . . . .”). Appellant's argument that employer-level plans do not have a beneficial interest in the trusts' assets directly contradicts guidance from the Department of Labor. The Secretary has issued opinion letters discussing the extent to which trust assets may be considered ERISA plan assets:

> In the Department's view, a plan obtains a beneficial interest in particular property if, under common law principles, the property is held in trust for the benefit of the plan or its participants and beneficiaries, or if the plan otherwise has an interest in such property on the basis of ordinary notions of property rights. Further, whether a plan has acquired a beneficial interest in definable assets depends, largely, on whether the plan sponsor has expressed the intent to grant such a beneficial interest or has acted or made representations sufficient to lead participants and beneficiaries of the plan reasonably to believe that such funds separately secure the promised benefits or are otherwise plan assets. The identification of plan assets therefore requires consideration of any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved.

Department of Labor, Advisory Op. No. 99-08A, 1999 WL 343509, at *3 (May 20, 1999) (footnote omitted). The first sentence in the paragraph above from this opinion letter is particularly applicable: “a plan obtains a beneficial interest in particular property”—that is, the employer-level employee welfare plans obtain a beneficial interest in the trust property—“if, under common law principles, the property is held in trust for the benefit of the plan *or its participants and beneficiaries*.” *Id.* (emphasis added). It is clear based on the governing documents that the property in the trusts is for the benefit of the plans' participants and beneficiaries. Therefore, the plans have a beneficial interest in trust property. The Secretary did not distinguish property held in trust for the benefit of the plan itself from property held in trust for the plans' participants and beneficiaries.

13

Appellant's proffered distinction reads as a rather transparent attempt to evade ERISA liability. Such liability would also seem applicable here considering Appellant has previously represented that ERISA governs the trust.[10] Because the employees have a beneficial interest in the trust, we believe the employer-level plans, in which employees are plan participants, also have a beneficial interest in the trust property.

### 2. 29 C.F.R. § 2510.3–101(h)(2)

We agree with the District Court's analysis that this regulation supports the conclusion that the employer-level plans include trust assets. The regulation provides:

> When a plan acquires or holds an interest in any entity (other than an insurance company licensed to do business in a State) which is established or maintained for the purpose of offering or providing any benefit described in section 3(1) or section 3(2) of the Act to participants or beneficiaries of the investing plan, its assets will include its investment and an undivided interest in the underlying assets of that entity.

29 C.F.R. § 2510.3–101(h)(2). Comments to this regulation state that "assets of entities . . . that are established for the purpose of providing benefits to participants of investing plans would include plan assets. This provision was intended to apply primarily

---

[10] The District Court noted that while it did not base its decision on judicial estoppel, Koresko has successfully argued before the U.S. District Court for the Eastern District of Pennsylvania that a "similar or identical employee benefit arrangement" was a welfare benefit plan governed by ERISA. (App. 35 n.15); *see REAL VEBA Trust v. Sidney Charles Mkts., Inc.*, No. 01-4693, 2006 WL 2086761, at *1–3, *6 (E.D. Pa. July 21, 2006). Although Koresko argued in this case to the District Court that the REAL VEBA trust is distinguishable, the Court did "not see how the issue of ERISA coverage differs between the two cases." (App. 35 n.15). In addition, the record includes a summary plan description which a participating employer gave to employee participants that states: "This Plan is covered by the Employee Retirement Income Security Act of 1974 ("ERISA") which was designed to protect employees' rights under benefit plans." (App. 1157). These representations suggest that Koresko originally understood that these plans were properly governed by ERISA.

to so-called 'multiple employer trusts.'" Final Regulation Relating to the Definition of Plan Assets, 51 Fed. Reg. 41262-01, 41263 (Nov. 13, 1986). This regulation is not directly on point, as there is no indication that employers joined the trust or established employer-level plans for the purpose of investing assets. *See Doyle*, 675 F.3d at 203 (describing this regulation as "where an employee benefit plan invests assets by purchasing shares in a company") (citing 29 C.F.R. § 2510.3–101).

The purpose behind the regulation and the provided example of its application, discussed below, are relevant and insightful to our analysis. The regulation appears concerned with complex arrangements, usually investments, in which the manager of a welfare plan would no longer owe fiduciary duties to the plan because the investment structure positions him to be in an indirect relationship to the plan. Final Regulation Relating to the Definition of Plan Assets, 51 Fed. Reg. at 41263. It would frustrate the "broad functional definition of 'fiduciary' in ERISA if persons who provide services that would cause them to be fiduciaries if the services were provided directly to plans are able to circumvent the fiduciary responsibility rules of the Act by the interposition of a separate legal entity between themselves and the plans." *Id.* The regulation itself provides the following example:

> A medical benefit plan, P, acquires a beneficial interest in a trust, Z, that is not an insurance company licensed to do business in a State. Under this arrangement, Z will provide the benefits to the participants and beneficiaries of P that are promised under the terms of the plan. Under paragraph (h)(2), P's assets include its beneficial interest in Z and an undivided interest in each of its underlying assets. Thus, persons with discretionary authority or control over the assets of Z would be fiduciaries of P.

29 C.F.R. § 2510.3–101(j)(12). Despite the fact that this example presupposes that the plan acquires a beneficial interest in a trust, the explanation is unmistakably clear that where a trust provides benefits to participants and beneficiaries of a plan, "persons with discretionary authority or control over the assets of [the trust] would be fiduciaries of [the plan]." *Id.* Koresko had control over the disposition of plan assets, and undoubtedly the trust provides benefits to participants and beneficiaries of the employer-level plans. The interposition of a multi-employer trust, in which legal title is held by the trustee, does not serve to divest Koresko of his fiduciary responsibilities to beneficiaries of the trust.

This Court has established that if an ERISA plan has a beneficial interest in property, this interest is sufficient to render the property "plan assets" under ERISA. *Doyle*, 675 F.3d at 200. The distinction Koresko advances between the plan itself and its beneficiaries contradicts persuasive authority from the Secretary and frustrates the broad functional definition of "fiduciary." *See Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) ("The definition of a fiduciary under ERISA is to be broadly construed."). For the foregoing reasons we agree with the District Court that the individual employer-level employee welfare benefit plans have a beneficial interest in the trusts, and therefore the assets of the trusts are "plan assets" within the meaning of ERISA.

    *B.*    *The 2009 Amendment*

16

The governing documents of the plans allow the League, "in its sole discretion," to amend the Plan Document. (App. 454).[11] The League in turn is REAL, the fictitious entity consisting of Koresko and Lawrence Koresko, which adopting employers join in adopting the plan. (*Id.* at 139, 1114). Appellant argues that the 2009 REAL VEBA and SEWBPT Amendment of Trust and Incorporated Plan Documents ("2009 Amendment") eliminated benefits to non-owner employees, and therefore the employer-level plans were no longer covered by ERISA. (Appellant's Br. 21–22); *see* (App. 1216–17). We agree with the District Court and hold that the 2009 Amendment was invalid.

As previously noted, federal regulations provide that an "employee benefit plan" under ERISA does not include "any plan, fund or program . . . under which no employees are participants covered under the plan." 29 C.F.R. § 2510.3-3(b); *see also Yates v. Hendon*, 541 U.S. 1, 21 (2004) ("Plans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside [ERISA's] domain.").[12] The 2009 Amendment provides: "No benefits shall be paid to or on account of any claimant, person, participant, or former participant . . . classified as a non-owner-employee, or to any beneficiary of any such [non-owner employee]." (App. 1216). Appellant argues that because the plans no longer have any non-owner employees, they cannot be governed by

---

[11] The Plan Document "governs the benefit arrangement" and is incorporated by each adopting employer. (App. 9, 141).

[12] This regulation also provides "[a]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business . . . which is wholly owned by the individual or by the individual and his or her spouse." 29 C.F.R. § 2510.3-3(c)(1). Some of the plans at issue in this case were determined by the District Court to not be governed by ERISA because of this regulation. (App. 153–56).

ERISA. Nevertheless, the District Court found "undisputed record evidence" that each of the plans at issue originally included at least one non-owner employee. (*Id.* at 36).

The District Court provided two reasons why the 2009 Amendment was invalid. First, the Court found that Koresko, Lawrence Koresko, and PennMont lacked authority to amend the plan under its governing documents. (*Id.* at 37–39). Second, the Plan Document prohibited the 2009 Amendment by disallowing amendments that create discrimination in favor of highly compensated employees, officers, or stockholders. (*Id.* at 39). The Court supported its conclusion with a policy argument, that it would be inconsistent with the purposes of the statute to allow an ERISA-covered employee welfare benefit plan to avoid enforcement of ERISA provisions by issuing a subsequent amendment. (*Id.* at 40).

Appellant rebuts the District Court's findings and argues that the 2009 Amendment was properly executed. We agree with both of the District Court's findings and therefore determine that the 2009 Amendment was invalid.

ERISA requires that employee welfare benefit plans "be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The written employee benefit plan must "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." *Id.* § 1102(b)(3). "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). However, "whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that

18

level." *Id.* at 85. "[A]n amendment is ineffective if it is inconsistent with the governing documents." *Depenbrock v. Cigna Corp.*, 389 F.3d 78, 82 (3d Cir. 2004) (citing *Delgrosso v. Spang & Co.*, 769 F.2d 928, 935–36 (3d Cir. 1985)); *see also Confer v. Custom Eng'g Co.*, 952 F.2d 41, 43 (3d Cir. 1991) ("Only a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan.").

### 1.    Lack of Authority

Regarding the District Court's first finding, we agree that Koresko, his brother Lawrence, and PennMont lacked authority to amend the plans. Appellant acknowledges that the governing documents allow the League to amend the plans. (Appellant's Br. 22) (citing App. 454). Appellant continues that the Master Trust Agreement defines "League" as "REAL" and he signed the amendment "as Attorney in Fact for all Participating Employers." (*Id.*); (App. 1114, 1221). The argument follows that because Koresko signed on behalf of the participant employers, the participant employers are collectively REAL, and the Master Trust Agreement defines "League" as "REAL"—Koresko was authorized to sign the 2009 Amendment. Our rejection of this convoluted argument does not "elevate[] form over substance." (Appellant's Br. 23). Rather, Koresko's argument ignores the unambiguous language of the governing documents. The League "in its sole discretion" may amend the Plan Document. (App. 37, 454). The 2009 Amendment was an amendment to the benefit structure in the Plan Document. (*Id.* at 1216–17). With the number of related entities and organizations in this case and under the governing documents, it is essential that amendments to the plan be executed specifically as

19

authorized under the governing documents. The governing documents simply do not authorize Koresko as attorney in fact for all participating employers to amend the plan.[13]

Similarly, the governing documents do not allow PennMont or Lawrence Koresko to amend the Plan Document.[14] Appellant argues that provisions in the governing documents delegate League authority to PennMont as Plan Administrator, "for administering the Plan" and "for plan administrative services." (Appellant's Br. 23–24) (citing App. 460, 1122); (App. 1131). This argument fails as none of the provisions delegating authority to PennMont include authorization to amend the plan. The role of plan administrator or the delegation of plan administrative services does not automatically entail the authority to amend the plan. *See Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996) (stating "it may be true that amending or terminating a plan (or a common-law trust) is beyond the power of a plan administrator (or trustee)—and, therefore, cannot be an act of plan 'management' or 'administration'"); *accord Bins v.*

---

[13] The Plan Document also allows employers "the right to amend the [b]enefit structures in [the plans] from time to time, and to amend or cancel any such amendments." (App. 454). Koresko does not argue that his authority to amend the plan stems from this provision despite the fact that he signed "as attorney in fact for all participating employers." (*Id.* at 1221). Therefore, we deem him to have waived reliance on this provision. *See Kost*, 1 F.3d at 182. Even if he had properly raised this argument, however, the Plan Document allows employers, and not the attorney in fact for all participating employers, the right to amend the benefit structures in the plans. (*Id.* at 454, 1221); *see Curtiss-Wright Corp.*, 514 U.S. at 85 ("[W]hatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level.").

[14] Although PennMont is authorized to amend the Master Trust Agreement for the SEWBPT, the 2009 Amendment eliminating non-owner employees is specifically an amendment to the Plan Document. (App. 1137, 1216). The Plan Document does not allow PennMont to amend its terms.

*Exxon Co. U.S.A.*, 220 F.3d 1042, 1053 (9th Cir. 2000) ("The act of amending, or considering the amendment of, a plan is beyond the power of a plan administrator and thus is not an act of plan management or administration."). The governing documents, both in describing the Plan Administrator's duties and in specifying amendment procedures, do not provide PennMont with the authority to amend the plans. Further, Appellant's argument that his brother Lawrence was authorized to amend the plan because he was "the League" is insufficient. (Appellant's Reply Br. 4). Lawrence Koresko did not sign on behalf of the League and did not mention the League in executing the amendment, therefore he also lacked authority to amend the Plan Document.

2.    Discriminatory Amendment

We also agree with the District Court's second finding that the Plan Document prohibits this type of amendment. The Plan Document provides: "no amendment shall . . . [c]reate or effect any discrimination in favor of Participants who are highly compensated, who are officers or [sic] the Employer, or who are stockholders of the Employer." (App. 454–56). The District Court found that eliminating non-owner employees from benefits violates this prohibition. (*Id.* at 39–40). Appellant does not dispute that the 2009 Amendment violates this provision. Rather, Appellant argues that this provision was intended to exempt the arrangement from federal income tax, and that the plan sponsor may choose at any time to terminate tax-exempt status and become a taxable organization. (Appellant's Br. 24–25).

21

Appellant's argument ignores the importance of adhering to procedures for amending a plan. The Secretary is correct that in order for Koresko's argument to succeed, he would have had to show that he amended the plan to remove this provision *before* executing the 2009 Amendment, "otherwise, the discrimination provision remains in conflict with [the 2009 Amendment]." (Appellee's Br. 35). The 2009 Amendment did not specifically eliminate the original provision or mention the original plan provision, but it directly conflicts with the original provision. In adhering to the governing documents and the amendment procedure set forth, the 2009 Amendment is invalid because it is inconsistent with the anti-discrimination clauses for future amendments.

We need not delve into the District Court's public policy arguments having found two reasons why the 2009 Amendment was invalid. We do note that the Supreme Court has articulated a purpose behind having written procedures govern making amendments to an ERISA plan: "such a requirement increases the likelihood that proposed plan amendments, which are fairly serious events, are recognized as such and given the special consideration they deserve." *Curtiss-Wright Corp.*, 514 U.S. at 82. Given the seriousness of plan amendments and the explicit directions in the applicable governing documents, we have little difficulty in holding that the 2009 Amendment is invalid because it was executed without proper authority and is in conflict with existing plan provisions.[15]

---

[15] We agree with the District Court that it is troubling that Koresko sought to avoid application of ERISA through this amendment. (App. 40 n.18) ("John Koresko admitted at oral argument that one purpose of the [2009] [A]mendment, which he authored, was to avoid application of ERISA."). While we acknowledge that a plan sponsor may amend or terminate an ERISA-covered plan, the termination of a plan through an amendment must follow the plan's amendment procedures. *See Hozier v. Midwest Fasteners, Inc.*, 908

22

## C.    Denial of defense costs

Appellant next contends that the District Court fundamentally erred and violated indemnification provisions set forth in the governing documents by denying him the advancement of defense costs. (Appellant's Br. 27–28). On September 16, 2013, the Court ordered that the trusts were barred from advancing defense costs to Koresko. (App. 1455). Koresko maintains this violates indemnification provisions in the governing documents. The Master Trust Agreements for the REAL VEBA Trust and SEWBPT provide indemnification for legal fees and expenses, "in advance, unless it is alleged and until it is conclusively determined that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to this Agreement." (*Id.* at 1120, 1136). Although the Secretary argues that the partial grant of summary judgment and subsequent bench trial "conclusively determined" that the claims arose from Koresko's breach of fiduciary duties, we do not rely on this basis to affirm this part of the District Court's order. (Appellee's Br. 37); (App. 1120, 1136).

We agree with the District Court that this indemnification provision, or Koresko's reliance on this provision to seek plan assets for advancement costs, is in violation of ERISA. The statute provides that "any provision in an agreement or instrument which

F.2d 1155, 1162 (3d Cir. 1990) (explaining that employers do not have "unfettered discretion to amend or terminate plans at will"). In distinguishing *Delgrosso v. Spang & Co.*, 769 F.2d at 935–36, a case in which we held that a company breached its fiduciary duty by failing to administer a plan pursuant to the governing documents, we noted in *Hozier* that "the particular amendment at issue in *Delgrosso* was invalid under the terms of the unamended plan's governing documents." *Hozier*, 908 F.2d at 1161 n.6. Appellant's reliance on *Hozier* for the proposition that he could decide at any time to terminate an ERISA plan is therefore unwarranted.

23

purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The Department of Labor has interpreted this statute to

> render[] void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan. Such an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations.

29 C.F.R. § 2509.75-4 (interpretive bulletin). Indemnification provisions are allowed if they "merely permit another party to satisfy any liability incurred by the fiduciary," such as liability insurance. *Id.* Plan indemnification provisions that allow the plan to indemnify a fiduciary are considered void. *See Johnson v. Couturier*, 572 F.3d 1067, 1079–80 (9th Cir. 2009) ("Thus, '[i]f an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect.'") (alteration in original) (quoting *IT Corp.*, 107 F.3d at 1418); *Perelman v. Perelman*, 919 F. Supp. 2d 512, 523 (E.D. Pa. 2013) (explaining that the indemnification provision does not violate ERISA because "it permits the Trustee to seek indemnification only from the employer and does not permit indemnification by the Plan").

Appellant urges this Court to follow *Harris v. GreatBanc Trust Co.*, No. EDCV12-1648-R (DTBx), 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013). In *Harris*, the court found an indemnification agreement valid under ERISA because it expressly prohibited indemnification if a court entered a final judgment from which no appeal could be taken finding breach of fiduciary duties. *Id.* at *3. Appellant argues the same

24

result as in *Harris* should apply here, because the Master Trust Agreement provides for indemnification "unless it is alleged and until it is conclusively determined that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to this Agreement." (Appellant's Br. 29–30) (citing App. 1120, 1136). Thus, Appellant argues that the indemnification provision complies with ERISA because it similarly does not allow for indemnification if Appellant is found to have violated fiduciary duties.

In addition to not being binding authority, the indemnification provision in *Harris* is distinguishable. In *Harris*, the provision required Sierra Aluminum, the sponsor of an employee stock ownership plan, to indemnify GreatBanc, the trustee of the plan. 2013 WL 1136558, at *1. This did not violate ERISA because, as discussed above, per guidance from the Department of Labor, indemnification provisions that "merely permit another party to satisfy any liability incurred by the fiduciary" are permissible. 29 C.F.R. § 2509.75-4. The Department of Labor allows a trustee to seek indemnification from another party, as long as the indemnification does not come from the plan itself. Unlike in *Harris*, in this case, Koresko was seeking advancement costs from the plans themselves, not another party. This would effectively "abrogate[e] the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." *Id.* Although Koresko could have relied on liability insurance or indemnification through another party, he could not rely on plan assets to front his legal costs. We agree with the District Court order denying Koresko from relying on plan assets to cover his litigation costs as a proper interpretation of 29 U.S.C. § 1110 and 29 C.F.R. § 2509.75-4.

## D.    Damages analysis

Koresko contends that the District Court's damages analysis was "legally unsupportable." (Appellant's Br. 32). He argues that he should only be required "to restor[e] plan participants to the position in which they would have occupied but for the breach of trust." (*Id.* at 33) (alteration in original) (quoting *Perelman*, 919 F. Supp. 2d at 519) (internal quotation marks omitted). Koresko argues that the plans at issue entitled beneficiaries to receive certain benefits, and that the District Court's order that he restore the depletion of assets of the trusts would be unnecessary for the plans to pay beneficiaries their entitled benefits. (Appellant's Reply Br. 5–6). ERISA provides that a fiduciary who breaches duties owed to a plan

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

Appellant's arguments fail for two reasons. First, as established above, the plans have a beneficial interest in trust assets. Koresko's argument that the Court "confuse[d] purported losses incurred by the Trusts with that of the employer-level plans" ignores the Court's finding, which we affirm, that the plans have a beneficial ownership interest in the trust assets. (Appellant's Br. 33). Koresko is not entitled to retain his ill-gotten gains because he depleted assets from the trusts and not from the individual plans. As the statute requires the fiduciary to return profits to the plan, the District Court properly

required Koresko to return profits to the trust, property that the plans have an ownership interest in. *See* 29 U.S.C. § 1109(a).

Second, disgorgement of profits is an equitable remedy and therefore allowable under the statute. *Id.*; *see S.E.C. v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) (stating that disgorgement of profits "is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs"); *Leigh v. Engle*, 727 F.2d 113, 122 n.17 (7th Cir. 1984) (explaining that legislative history indicates Congress intended disgorgement of profits to be an available remedy for breach of fiduciary duties under ERISA). We have explained that "ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs." *Edmonson*, 725 F.3d at 415–16; *see also Leigh*, 727 F.2d at 122 ("ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss."). The purpose of disgorgement of profits is deterrence, which is undermined if the fiduciary is able to retain proceeds from his own wrongdoing. Koresko's argument that the plans have suffered no damages is without merit. The District Court properly ordered Koresko to disgorge his profits, and the Court's damages analysis is supported by the statute. *See* 29 U.S.C. § 1109(a).

## III. DISMISSAL DISCUSSION

Koresko additionally appeals the District Court's August 4, 2015 order appointing an independent fiduciary and requiring Koresko to pay future costs. We lack jurisdiction to review this appeal because the August 4, 2015 order was not a final decision of the

District Court. *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . .").

A "final decision" is defined as a decision of a district court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). An order that "finds liability and imposes a monetary remedy, but does not reduce that award to a specific figure" will usually be considered interlocutory and not a final decision. *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 98 (3d Cir. 1988); *see also Pennsylvania v. Flaherty*, 983 F.2d 1267, 1276 (3d Cir. 1993) (stating that "the norm is that an award . . . which does not fix the amount of the award or specify a formula allowing the amount to be computed mechanically is not a final decision") (quoting *John v. Barron*, 897 F.2d 1387, 1390 (7th Cir. 1990)) (internal quotation marks omitted). We have elaborated on an exception to the rule that if a judgment does not fix the amount of damages, it is not a final decision:

> However, "even when a judgment fails to fix the amount of damages, if the determination of damages will be mechanical and uncontroversial, so that the issues the defendant wants to appeal before that determination is made are very unlikely to be mooted or altered by it—in legal jargon, if only a 'ministerial' task remains for the district court to perform—then immediate appeal is allowed."

*Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193, 200 n.8 (3d Cir. 2004) (quoting *Prod. & Maint. Emps. Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1401 (7th Cir. 1992)). Appellant contends that only ministerial tasks remain, rendering the District Court order a final decision. We do not agree.

We believe the District Court order requiring Koresko to pay future costs incurred by the independent fiduciary is not a final decision at this point because the order imposed an unquantified and uncertain monetary award without a mechanical computation to ascertain these damages. The Court ordered that "[t]he costs of the Trustee's appointment ordered herein will be borne by the Koresko Defendants." (App. 1631). The Court did not define "[t]he costs of the Trustee's appointment" or provide a method to calculate these costs. Instead the Court specified that the trustee's services would initially be paid out of trust assets to be later reimbursed by Appellant. (*Id.*). The District Court retained jurisdiction over this case in order to enforce compliance with the order and to calculate the costs Appellant will owe to reimburse the plans for paying the trustee. (*Id.*) ("At the close of its appointment, the Court shall issue a separate order specifying the total amount the Koresko Defendants are liable to the Plans to restore on account of this appointment."). The Court recognized the complexity of these damages and the importance of determining exactly what costs were incurred by the appointment of the independent fiduciary. The Court's contemplation that a subsequent order would be necessary to calculate these costs does not evince that "the determination of damages will be mechanical and uncontroversial." *Skretvedt*, 372 F.3d at 200 n.8 (quoting *Prod. & Maint. Emps. Local 504*, 954 F.2d at 1401) (internal quotation marks omitted).

Appellant relies on *Vitale v. Latrobe Area Hospital* as an example of a case in which we determined that a district court order was a final decision even though it did not specifically fix damages. 420 F.3d 278, 281 (3d Cir. 2005). *Vitale* is distinguishable because in that case we determined "that the benefits calculation required by the District

29

Court would be entirely mechanical" as set forth by a "precise mathematical formula for calculating the monthly retirement benefit." *Id.* In this case, the calculation of costs is far from mechanical or ascertainable, which is why the District Court explained that it would issue a separate order specifying the amount Koresko owes. The August 4, 2015 order is not a final decision because it did not specify fixed damages or a mechanical method to calculate damages. *See Dir., Office of Workers' Comp. Programs v. Brodka*, 643 F.2d 159, 161 (3d Cir. 1981) ("It is a well-established rule of appellate jurisdiction 'that where liability has been decided but the extent of damage remains undetermined, there is no final order.'") (quoting *Sun Shipbuilding & Dry Dock Co. v. Benefit Review Bd., U.S. Dept. of Labor*, 535 F.2d 758, 760 (3d Cir. 1976)).

We also agree with Appellee that we lack jurisdiction under 28 U.S.C. § 1292(a)(1) and 28 U.S.C. § 1292(a)(2) for appeals from interlocutory orders pertaining to injunctions and receiverships. Further, the District Court order does not fall within the collateral order doctrine, which would allow it to be appealed.

Although 28 U.S.C. § 1292(a)(1) allows appeals from certain interlocutory orders pertaining to injunctions, the District Court order is not an injunction because it was not "directed to a party" or "enforceable by contempt." *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 392 (3d Cir. 2006) (quoting *Cohen v. Bd. of Trs. of the Univ. of Med. & Dentistry of N.J.*, 867 F.2d 1455, 1465 n.9 (3d Cir. 1989)) (internal quotation marks omitted). The order is directed at the newly appointed independent fiduciary, which is not a party in this case. Further, because the order does not direct Koresko to pay a specified amount, it is not enforceable by contempt. *See Santana Prods., Inc. v. Compression*

*Polymers, Inc.*, 8 F.3d 152, 155 (3d Cir. 1993) (explaining that an order is not injunctive because "the order does not compel [a party] to take any action nor does the order restrain [the party] from doing anything"). Koresko is not compelled to take any action at this point where the court has not yet calculated damages Koresko owes to the plans.

Under 28 U.S.C. § 1292(a)(2), we have jurisdiction to review "[i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." The purpose of § 1292(a)(2) is "to relieve the parties from interlocutory orders affecting control over property." *Martin v. Partridge*, 64 F.2d 591, 592 (8th Cir. 1933); *see also* 16 Charles Alan Wright et al., *Fed. Prac. & Proc. Juris.* § 3925 (3d ed. 2015) (explaining the purpose behind the statute that "[a] receivership can drastically curtail existing property rights, foreclosing independent action and decision in irreparable ways"). The concern over property rights, which justifies taking appeals from interlocutory orders involving receiverships, does not apply in this case. The August 4, 2015 order did not affect the parties' control over trust property. Koresko lost control over the trusts through the Court's September 16, 2013 and March 13, 2015 orders. (App. 325–27, 1448–52). Koresko timely appealed the final judgment in this case, which removed him from his position as a fiduciary. (*Id.* at 1, 325–326). Therefore, the August 4, 2015 order is not a receivership order under 28 U.S.C. § 1292(a)(2) because the order did not affect Koresko's control over trust property assets.

The collateral order doctrine allows appeals from district court orders that meet a "stringent" standard. *In re Pressman-Gutman Co., Inc.*, 459 F.3d at 396; (quoting *Will v.*

31

*Hallock*, 546 U.S. 345, 349 (2006)) (internal quotation marks omitted). The order must: "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Id.* at 395–96 (quoting *Will*, 546 U.S. at 349) (internal quotation marks omitted). Failure to meet any one of the three requirements renders the doctrine inapplicable. *Id.* By its own terms, the August 4, 2015 order does not conclusively determine the disputed question because the order states that "the Court shall issue a separate order specifying the total amount the Koresko Defendants are liable to the Plans." (App. 1631). The order did not conclusively determine the issue of damages in this case and accordingly the collateral order doctrine does not apply.

Because we lack jurisdiction to review the District Court's August 4, 2015 order, we will dismiss the appeal of that order.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the August 3, 2012; September 16, 2013; February 6, 2015; March 13, 2015; and May 13, 2015 rulings of the District Court on appeal before us and dismiss Koresko's appeal of the Court's August 4, 2015 order for lack of jurisdiction.