**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| INVICTUS SPECIAL SITUATIONS MASTER I, L.P., a Cayman Islands exempted limited partnership, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2023-1099-NAC |
| INVICTUS GLOBAL MANAGEMENT, LLC, a Delaware limited liability company, INVICTUS SPECIAL SITUATIONS I GP, LLC, a Delaware limited liability company, CINDY CHEN DELANO, an individual, and AMIT PATEL, an individual, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| INVICTUS GLOBAL MANAGEMENT, LLC, a Delaware limited liability company, INVICTUS SPECIAL SITUATIONS I GP, LLC, a Delaware limited liability company, CINDY CHEN DELANO, an individual, and AMIT PATEL, an individual, | ) ) ) ) ) ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | |
| INVICTUS SPECIAL SITUATIONS MASTER I, L.P., a Cayman Islands exempted limited partnership, | ) ) ) ) | |
| Counterclaim Defendant, | ) ) | |
| and | ) ) | |
| UNUMX, a Cayman Islands exempted company, | ) ) ) | |
| Third Party Defendant. | ) | |

## ORDER DENYING APPLICATION FOR
## <u>CERTIFICATION OF INTERLOCUTORY APPEAL</u>

WHEREAS:

1. On October 30, 2023, plaintiff Invictus Special Situations Master I LP ("Fund") filed a complaint. Dkt. 1. The Fund alleged that defendants breached the Fund's management agreement by refusing to provide contractually required information to the Fund's replacement after the entity defendants' removal as the Fund's general partner and management company. *See, e.g., id.* at 10, 32-33. The Fund also alleged that defendants entered into conflicted transactions prohibited by the Fund's partnership agreement and misappropriated Fund assets. *See, e.g., id.* at 38-39, 44-45.

2. On November 17, defendants answered the complaint and asserted counterclaims for advancement. Dkt. 40. On December 7, the Fund and third-party defendant UnumX ("Fund Parties") answered the counterclaims and asserted the following defense: "Defendants' claims are barred . . . by Defendants' . . . breaches of ERISA." Dkt. 51 at 36-37.

3. On January 6, 2024, shortly before a scheduled trial in this matter, defendants filed a notice of removal in the U.S. District Court for the District of Delaware based on that ERISA defense. Dkt. 82. On January 12, the District Court remanded proceedings to this Court ("Remand Ruling"). *Invictus Special Situations Master I, L.P. v. Invictus Glob. Mgmt., LLC*, 2024 WL 175736 (D. Del. Jan. 12, 2024). The District Court noted that "ERISA . . . is subject to exclusive federal court jurisdiction." *Id.* at *3 n.1. The court however concluded that "[a] federal defense

does not confer subject matter jurisdiction," that "Plaintiff's allegations relate to different duties than ERISA," and that "[t]o the extent that Plaintiff raises a claim under ERISA at a later point in time, the Court of Chancery would not have jurisdiction over such a cause of action." *Id.* at *2-3 & n.1.

4. On March 27, the Fund Parties moved for partial summary judgment on defendants' counterclaims. Dkt. 123.[1] On May 6, defendant Chen Delano cross-moved for summary judgment on her advancement counterclaims, which the other defendants subsequently joined. Dkt. 143; Dkt. 173. On May 21, the Fund Parties filed their answering brief in opposition to that motion. Dkt. 152. They argued that if the reasons asserted in their motion were insufficient, then the Court needed to address their ERISA defense before granting Chen Delano's motion. *See, e.g., id.* at 4.

5. On September 9, the Court issued a bench ruling on the cross-motions for summary judgment ("Bench Ruling"). Dkt. 227. The Court analyzed the plain language of the contracts providing for advancement, determined that they contained broad indemnification and advancement language, and concluded that they provided defendants with a contractual right to advancement. *Id.* at 10-13, 20-21, 23-35. The Court reached that conclusion by applying "pedestrian concept[s]" of Delaware law and noted that a contrary conclusion would, given similarities between the contract text and key statutory language, "risk eroding Delaware corporations' authority to

---

[1] The Fund Parties explained in a footnote in their opening brief that they were not raising ERISA-based arguments in their motion. *Id.* at 3 n.3.

provide for broad mandatory advancement pursuant to DGCL Section 145 and the very strong policies underlying that power." *Id.* at 20, 25-26.

6. As to ERISA, the Bench Ruling noted the conclusions in the Remand Ruling. *Id.* at 35-37. The Court explained that neither party "satisfactorily articulate[d] why this Court should or even can address the contours of ERISA." *Id.* Accordingly, the Court entered a "decision on the counterclaims solely as they relate to Delaware law" and "specifically preserved" "[a]ny questions as to the impact of ERISA," noting that "[i]f those issues need to be litigated, the parties may do so in federal court." *Id.*

7. On September 16, the Fund Parties filed a motion for reargument. Dkt. 218. In the motion, the Fund Parties argued that the Remand Ruling concluded that their ERISA defense did not raise a federal question and required this Court to rule on that defense. *See, e.g., id.* at 3. The Fund Parties argued that this Court must address the defense before granting summary judgment; otherwise, the Fund Parties will be stripped of their rights without due process. *Id.* at 4, 10.

8. On November 15, the Court issued an order partially denying the motion. Dkt. 242. The Court again noted the conclusions in the Remand Ruling. *Id.* The Court determined that they did not equate to a conclusion that this Court must rule on the ERISA defense. *Id.* The Court reiterated that neither party had adequately explained whether the Court could or should rule on ERISA questions, so it decided the matter under Delaware law and preserved ERISA questions for federal litigation. *Id.*

9. On November 22, the Fund Parties filed an application for certification of interlocutory appeal ("Application"). Dkt. 252. The Application turns on this Court's decision in the Bench Ruling to grant Defendants' summary judgment motion under Delaware law while simultaneously preserving (instead of resolving) the Fund Parties' ERISA defense so that the parties could litigate that in a plenary action in federal court. *See, e.g., id.* at 1, 3-4. The Application states that "[o]n November 20 . . . the Fund's general partner commenced an action in the district court to obtain a ruling on the preserved ERISA defense, and is seeking appropriate injunctive relief to ensure the legal protections under ERISA are considered." *Id.* at 6.

10. On December 6, the Fund filed a motion for stay pending appeal, in which it requested the Court to stay any obligation to make advancement payments under the Bench Ruling pending interlocutory appeal and the District Court's decision on the Fund's application for injunctive relief. Dkt. 260 at 1. The Fund attached to the motion that federal application for injunctive relief, as well as its concomitant emergency motion for a temporary restraining order and preliminary injunction. *Id.* at Exs. A & B. The Fund confirmed during oral argument that the same federal judge who issued the Remand Ruling is presiding over that federal application.

11. On December 11, the Court issued a bench ruling granting the motion to stay pending the District Court's decision on the Fund's application for emergency injunctive relief. The Court denied the motion to stay pending interlocutory appeal. In its ruling, the Court noted that if the District Court concluded that it did not have

jurisdiction to decide the ERISA issue and that this Court should decide the issue, then this Court would decide the issue and follow the District Court's guidance.

NOW, THEREFORE, the Court, having carefully considered the Application and the parties' arguments, IT IS HEREBY ORDERED, this 12th day of December 2024, as follows:

1. Supreme Court Rule 42 governs certification of interlocutory appeals. "The purpose of Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court." *In re Del. Pub. Schs. Litig.*, 2022 WL 1220075, at *9 (Del. Ch. Apr. 26, 2022) (alteration and internal quotation marks omitted), *appeal refused*, 277 A.3d 296 (Del. 2022) (TABLE).

2. Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources." Supr. Ct. R. 42(b)(ii). "This language from Rule 42 serves as an interpretive principle, requiring that the court construe its factors to make interlocutory appeals the exception and not the rule." *Norwest Venture Pr's XIV, LP, et al. v. Andreacchi*, C.A. No. 2024-0411-KSJM, at *3 (Nov. 4, 2024) (internal citations omitted).

3. Thus, applications for interlocutory review are "rarely granted," "generally not favored," and "accepted only in extraordinary circumstances." Supr. Ct. R. 42 cmt.; *see also Mercury Pr's Mgmt., LLC v. Valo Health, Inc.*, C.A. No. 2023-0318-MTZ, at 5 (Feb. 5, 2024) (quoting *Robino-Bay Ct. Plaza, LLC v. W. Willow-Bay Ct., LLC*, 2007 WL 4463593, at *1 (Del. 2007) (TABLE)). An application for

interlocutory appeal therefore "requires a strict analysis" by this Court, which has discretion in determining whether to recommend that an interlocutory appeal be certified. *Chemours Co. v. DowDuPont Inc.*, 2019 WL 2404817, at *1 (Del. Ch. June 7, 2019); *see Mercury Pr's Mgmt., LLC*, C.A. No. 2023-0318-MTZ, at 5 n.19.

4.      For advancement cases especially, interlocutory appeals "should be reserved for particularly exceptional cases." *Riker v. Teucrium Trading, LLC*, 2023 WL 4411609, at *2 (Del. Ch. July 7, 2023), *appeal refused*, 301 A.3d 596 (Del. 2023). "By design, Delaware authorizes entities to grant broad advancement rights." *Salomon v. Kroenke Sports & Entertainment, LLC*, 2020 WL 3963937, at *2 (Del.Ch. July 08, 2020) (quoting *Sider v. Hertz Glob. Holdings, Inc.*, 2019 WL 2501481, at *3 (Del. Ch. June 17, 2019)). "Despite having chosen to grant those rights, entities often resist complying with their advancement obligations." *Salomon*, 2020 WL 3963937, at *2. "Seeking interlocutory review of an advancement determination is one way to 'turn off the advancement spigot.'" *Id.* (quoting *Sider*, 2019 WL 2501481, at *3). "But the 'policy of Delaware favors advancement when it is provided for, with the Company's remedy for improperly advanced fees being recoupment at the indemnification stage,' or 'on appeal after issues of reasonableness have been finally resolved.'" *Salomon*, 2020 WL 3963937, at *2 (quoting *Sider,* 2019 WL 250148, at *3).

5.      To certify a Rule 42 application, "two rigorous hurdles" must be cleared. *Elutions Cap. Ventures S.A.R.L. v. Betts*, 2022 WL 17075692, at *3 (Del. Ch. Nov. 18, 2022) (internal citations and quotations omitted). The order must have "decide[d] a

substantial issue of material importance that merits appellate review before a final judgment"; and there must be "substantial benefits" to granting the application "that will outweigh the certain costs that accompany an interlocutory appeal." Supr. Ct. R. 42(b)(i)-(ii). "Only if both criteria are met can the trial court certify the interlocutory appeal." *Palkon, et al. v. Maffei, et al.*, C.A. No. 2023-0449-JTL, at 4 (Mar. 21, 2024).

6. "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to collateral matters." *Sprint Nextel Corp. v iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008) (quoting *Casteldo v. Pittsburgh-Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973)). "As commonly articulated, the substantial-issue requirement is met when a decision speaks to the merits of the case." *Kulak v. Itshak, et al.*, C.A. No. 2023-0011-KSJM, at *3 (June 26, 2024) (internal citations omitted).[2]

7. "If the substantial-issue requirement is met, then the court must analyze eight factors to determine whether 'there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal.'" *Andreacchi*, C.A. No. 2024-0411-KSJM, at 3 (quoting Supr. Ct. R. 42(b)(ii)).[3] Those factors include whether:

---

[2] *But see id.* at *3-4 ("In practice, however, the Supreme Court has accepted interlocutory appeals of non-merits-based questions that implicate significant issues under Delaware law." (citing *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *1 n.9 (Del. Ch. Oct. 3, 2022))).

[3] *See also Kulak*, C.A. No. 2023-0011-KSJM, at 4 ("Even assuming that Defendants have met the substantial-issue test, the Application still fails because the costs of interlocutory appeal

(A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice.[4]

8.     As a final step, Rule 42 directs the trial court to engage in balancing:

After considering [the eight] factors and its own assessment of the most efficient and just schedule to resolve the case, the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal.[5]

**The Substantial Issue Requirement**

9.     The Application argues that "the Bench Ruling made a determination about a disputed and uncertain legal question pertaining to the propriety of [Chen Delano's] advancement requests.  The substantial issue criterion is met."  Dkt. 252

---

outweigh the benefits. Rule 42 supplies eight factors to consider when conducting this balancing analysis.").

[4] Supr. Ct. R. 42(b)(iii).

[5] *Id.*; *see also Envirokare Composite Corp., v. D&D Manufacturing, LLC, et al.*, C.A. No. 2022-1202-KSJM, at 6 (April 9, 2024) ("Factor D . . . was satisfied, but the trial court denied certification because the remaining factors weighed against interlocutory appeal." (citing *Energy Transfer Equity, L.P. v. Twin City Fire Ins. Co.*, 2020 WL 6112299, at *3 (Del. Super. Oct. 16, 2020); *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *3)).

at 6&7 (internal citations and quotations omitted). Defendants concur in their joint opposition to the Application that the "Court's advancement orders qualify as a substantial issue of material importance." Dkt. 253 at 7. The Court agrees that the substantial-issue requirement is met here because the Court rendered a determination on "entitlement to advancement" in the Bench Ruling, which "speaks directly to the merits of the [parties'] claims, not collateral matters." *Sider*, 2019 WL 2501481, at *4.

### **Multi-Factor Balancing**

10. Because the substantial-issue requirement is met, the Court must proceed to analyze the factors set forth in Rule 42(b)(iii) to determine whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal." Supr. Ct. R. 42(b)(ii). To that point, the Fund Parties argue that the "Bench Ruling . . . implicates at least five of the eight grounds listed in Rule 42(b)(iii)." Dkt. 252 at 3. The Fund Parties argue in particular as follows:

- "The Bench Ruling decides a novel legal question: whether the Court of Chancery has jurisdiction to consider a federal ERISA defense to a counterclaim (Rule 42(b)(iii)(A))";[6]

- "The Bench Ruling conflicts with District Court's prior remand decision (Rule 42(b)(iii)(B))";[7]

---

[6] *Id.* at 3. Rule 42(b)(iii)(A) is referred to herein as "Factor A."

[7] Dkt. 252 at 3. Rule 42(b)(iii)(B) is referred to herein as "Factor B."

- "The Bench Ruling implicates the Supremacy Clause and the controverted jurisdiction of the trial court, by deciding an issue subject to a federal defense but without ruling on the defense (Rule 42(b)(iii)(C) & (D))";[8] and

- "Review serves considerations of justice, to prevent the irretrievable dispensing of millions of pension funds' dollars to Defendants' current and prior counsel, while Defendants have previously communicated their insolvency and refuse to provide evidence of their ability to repay any amounts advanced if it is later determined that they are not entitled to indemnification (Rule 42(b)(iii)(H))."[9]

11.     The Court addresses each of these factors in turn.

12.     Regarding Factor A, the Fund Parties argue that the Bench Ruling raises a novel legal question:  whether the Court has authority to consider ERISA as a defense to a counterclaim.  Dkt. 252 at 3.

13.     But the Fund's ERISA argument is now being considered by the federal District Court in connection with the Fund's emergency application for injunctive relief.  Dkt. 260 at Exs. A & B.  As this Court noted during its bench ruling partially granting the Fund's motion for stay, either the District Court will decide the question or, if the District Court determines that it does not have jurisdiction to decide the question and that this Court should decide the question, then this Court will decide

---

[8] Dkt. 252 at 4.  Rule 42(b)(iii)(C)-(D) are referred to herein as "Factor C" and "Factor D," respectively.

[9] Dkt. 252 at 4.  Rule 42(b)(iii)(H) is referred to herein as "Factor H."

the question according to the District Court's guidance. Accordingly, because the federal District Court is now presiding over an emergency application for injunctive relief as to the ERISA question, a cost-benefit analysis does not weigh in favor of interlocutory review by the Delaware Supreme Court.

14. Also, defendants point to *Trascent Management Consulting, LLC v. Bouri*,[10] in which the Delaware Supreme Court concluded that this Court did not need to resolve a defense involving the validity of a contract on which indemnity is based before awarding advancement. Dkt. 253 at 8-9.

15. Regarding Factor B, the Application argues that the Court's conclusion in the Bench Ruling that it can rule without considering the ERISA defense conflicts with the Remand Ruling. Dkt. 252 at 8-9. The Fund Parties argue in particular that the District Court ruled that raising a federal statute defensively does not confer federal jurisdiction, and that the District Court's decision to remand means that this Court should have ruled on the ERISA defense. *Id.*

16. But as defendants largely note in their joint opposition, in addition to concluding that a "federal defense does not confer [federal] subject matter jurisdiction" upon removal, the District Court concluded that the Fund Parties' allegations "relate to different duties than ERISA," and that "[t]o the extent that Plaintiff raises a claim under ERISA at a later point in time, the Court of Chancery would not have jurisdiction over such a cause of action." *Invictus Special Situations Master I, L.P.*, 2024 WL 175736, at *2-3 & n.1; *see also* Dkt. 253 at 5, 10-11, 15. The

---

[10] 152 A.3d 108, 110-12 (Del. 2016).

District Court also quoted Third Circuit precedent that "ERISA . . . is subject to exclusive federal court jurisdiction." *Invictus Special Situations Master I, L.P.*, 2024 WL 175736, at *3 n.1 (quoting *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 175 (3d Cir. 1993)). That is different from concluding that this Court must rule on the ERISA defense.

17. The Bench Ruling considered the Remand Ruling and then ruled on defendants' counterclaims "solely as they relate[d] to Delaware law"—including because, despite extensive and pointed questioning by the Court, the parties could not "satisfactorily articulate why this Court should or even can address the contours of ERISA." Dkt. 188 at 42-48, 74-75, 85-95; Dkt. 227 at 36. The Court simultaneously preserved any ERISA-related questions for the parties to litigate in federal court. *Id.* at 36-37. Indeed, the Fund noted in its motion for a stay that the Bench Ruling was "unequivocal . . . that the ERISA defense is preserved for a federal court . . ." Dkt. 260 at 3. That is not inconsistent with the District Court's decision to remand the case and statement that "ERISA . . . is subject to exclusive federal court jurisdiction." *Invictus Special Situations Master I, L.P.*, 2024 WL 175736, at *3 n.1. Nor is it inconsistent with the District Court's conclusion that the ERISA defense did not confer federal subject matter jurisdiction upon removal. *Id.* at 2-3. The Fund Parties retain optionality to address those ERISA issues in a non-removal context; they can do so on the face of a well-pleaded plenary complaint in federal court.[11] Indeed, the

---

[11] Defendants' counsel noted as much during oral argument on the parties' cross-motions for summary judgment. *See* Dkt. 188 at 43 ("I suppose what Your Honor could do is enter an order providing for advancement. The other side does have the freedom to do whatever they

Fund Parties currently are taking advantage of that optionality via their federal complaint for declaratory and injunctive relief and emergency motion for injunctive relief as to the ERISA question. Dkt. 260 at Exs. A-B.

18. Now that the very same District Court and judge who wrote the remand decision is presiding over the ERISA issue as a result of the Fund's federal complaint and emergency motion, that court is in a position to determine whether the Bench Ruling, indeed, conflicted with the Remand Ruling. Accordingly, the cost-benefit analysis weighs against interlocutory review as to any purported conflict between the Bench Ruling and the Remand Ruling.

19. Regarding Factors C and D, the Fund Parties argue that the Bench Ruling implicates the Supremacy Clause and the controverted jurisdiction of the trial court by deciding an issue subject to a federal defense. The Court, however, did not render a decision on the ERISA defense but instead specifically preserved that issue for the parties to litigate in federal court. *See, e.g.*, Dkt. 227 at 35-37. As discussed, if the District Court concludes that it does not have jurisdiction to decide the issue

---

want, including filing claims in federal court."), 74 (THE COURT: "And what is your view on whether I have subject matter jurisdiction to consider these ERISA questions? [COUNSEL]: I believe that Your Honor does not. I believe, however, that if they want to raise a federal defense, they can seek redress in the federal court. . . . if that's the path that they want to go down, I think that the federal court can do it."), 86-87 ("presumably such a case I would think would be brought in federal court"). During yesterday's oral argument on the motion for a stay, this Court learned for the first time that defendants are now taking the position in the pending federal action that the District Court does *not* have the ability to decide the Fund's ERISA argument. The Court responded that if the District Court agrees with defendants and determines that this Court needs to decide the issue, then the stay will remain in place until this Court decides the issue.

and that this Court should decide the issue, then this Court will decide the issue according to the District Court's guidance.

20. The Fund Parties argue that the Bench Ruling implicates Factors C and D by holding that the Court has jurisdiction under 10 *Del. C.* § 341 to enter summary judgment while preserving the ERISA defense for the parties to litigate in federal court. Dkt. 252 at 9. They further argue that if ERISA and Delaware law on advancement are inconsistent, Delaware law must give way to federal law, and that the U.S. Constitution deprives a state court from imposing a duty that is inconsistent with federal law. *Id.*

21. But the Bench Ruling did not result in a situation where Delaware law did not "give way to federal law." Again, the Court specifically preserved the parties' ability to litigate ERISA issues in federal court such that the Bench Ruling's conclusion based solely on Delaware law *would* give way to federal law should a federal court conclude that ERISA precludes advancement here. Dkt. 227 at 35-37. This is evidenced by the fact that the Fund Parties currently are litigating in federal court to enjoin the advancement based on the ERISA issue. Dkt 260 at Exs. A-B. Likewise, the Court did not impose a duty inconsistent with federal law because the Bench Ruling awarded entitlement to advancement under Delaware law only, while specifically preserving the Fund Parties' ERISA defense for litigation and resolution in federal court; should the Fund Parties seek and obtain a determination in federal

court that the ERISA issues preclude advancement,[12] that award necessarily would yield to such a determination. *See, e.g.*, Dkt. 227 at 35-37.

22. The Fund Parties cite *Secretary of U.S. Department of Labor v. Koresko*[13] and argue that, if ERISA under Third Circuit precedent precludes advancement, then defendants cannot be entitled to judgment as a matter of law as to advancement. Dkt. 252 at 9-10.

23. Indeed—as this Court noted during its ruling on the Fund's motion to stay—*Koresko* holds that ERISA imposes restrictions on the use of plan assets for advancement, and significant similarities exist between the facts of this case and those in *Koresko*. But the Court noted that the applicability of *Koresko* to the facts here appears to depend on whether defendants' breach of the plan-governing documents and decision to retain ERISA plan assets after they were removed as the Fund's general partner and management company constitute breaches of ERISA fiduciary duties. The Court noted that the question necessarily would depend on the application of ERISA case law, which the federal District Court is in a far superior position to decide, even leaving aside the Court's jurisdictional concerns. Accordingly, the cost-benefit analysis weighs against interlocutory review as to Factors C and D.

24. Regarding Factor H, the Fund Parties argue that the Bench Ruling effectively stripped the Fund Parties of a federal defense without due process and without a meaningful opportunity to be heard. Dkt. 252 at 10-11. But, again, this

---

[12] Again, the Fund currently is seeking such a determination. *See* Dkt. 260 at Exs. A-B.

[13] 646 F. App'x 230 (3d Cir. 2016).

Court's Bench Ruling specifically preserved the ERISA question so that the parties could litigate it in federal court. *See, e.g.*, Dkt. 227 at 35-37. This Court also stayed proceedings in this case pending the District Court's decision on the Fund's application for emergency injunctive relief regarding the ERISA question. If the District Court determines that it does not have jurisdiction to decide the issue and that this Court should decide the issue, this Court will decide the issue and follow the District Court's guidance. Accordingly, the Fund's ERISA question will be decided by either the District Court or this Court before the Fund is required to advance any payments to defendants. The Fund Parties therefore have not been stripped of their due process rights regarding the ERISA defense, and a cost-benefit analysis does not weigh in favor of interlocutory review.

25. After considering the parties' arguments and balancing the Rule 42(b) factors, the Court concludes that the likely benefits of interlocutory review here do not outweigh the probable costs. The Court concludes that the factors weigh against granting certification, and that this case does not present an exceptional circumstance warranting interlocutory review. Supr. Ct. R. 42 (b)(ii).

26. Accordingly, and for all the foregoing reasons, I DENY the Application. IT IS SO ORDERED.

           */s/ Nathan A. Cook*
           Vice Chancellor Nathan A. Cook