# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

INVICTUS SPECIAL SITUATIONS
MASTER I, L.P., a Cayman Islands exempted
limited partnership,

          Plaintiff,

          v.

INVICTUS GLOBAL MANAGEMENT,
LLC, a Delaware limited liability company,
INVICTUS SPECIAL SITUATIONS I GP,
LLC, a Delaware limited liability company,
CINDY CHEN DELANO, an individual, and
AMIT PATEL, an individual,

          Defendants.

_____

INVICTUS GLOBAL MANAGEMENT,
LLC, a Delaware limited liability company,
INVICTUS SPECIAL SITUATIONS I GP,
LLC, a Delaware limited liability company,
CINDY CHEN DELANO, an individual, and
AMIT PATEL, an individual,

          Counterclaim Plaintiffs,

          v.

INVICTUS SPECIAL SITUATIONS
MASTER I, L.P., a Cayman Islands exempted
limited partnership,

          Counterclaim Defendant,

    and

UNUMX, a Cayman exempted company,

          Third Party Defendant.

C.A. No. 2023-1099-NAC

## ORDER CERTIFYING INTERLOCUTORY APPEAL

WHEREAS:

1.      Plaintiff Invictus Special Situations Master I LP ("Fund") is a privately held fund formed to make and hold investments. ERISA investors invested in the Fund. The Fund contains ERISA assets. Dkt. 383.

2.      The Fund appointed defendant Invictus Special Situations I GP, LLC ("Invictus GP") as its general partner and defendant Invictus Global Management, LLC ("IGM") as its management company via a partnership agreement and management agreement, respectively. Both agreements are Fund governing documents. *Id*.

3.      Defendants Cindy Chen Delano and Amit Patel owned and controlled IGM and Invictus GP at all relevant times. They agreed to manage Fund assets as ERISA plan assets; for IGM to serve as a qualified professional asset manager; and for Invictus GP to be subject to the standard of a fiduciary under Title I of ERISA. *Id*.

4.      In late 2023, the Fund filed this action for breach of contract and injunctive and declaratory relief. It alleged, *inter alia*, that defendants breached the partnership and management agreements by withholding Fund assets consisting of approximately $10 million and information after the Fund removed IGM and Invictus GP as its management company and general partner. Dkt. 1.

5.      Defendants answered the complaint and counterclaimed that the partnership and management agreements entitled them to advancement from the Fund for legal expenses incurred in this and other actions. Dkt. 40. The Fund answered the counterclaims

2

and raised this defense: "Defendants' claims are barred . . . by Defendants' . . . breaches of ERISA." Dkt. 51.[1]

6. In early 2024, on the eve of trial, Defendants removed to the U.S. District Court for the District of Delaware, citing the ERISA defense. Dkt. 82. The Fund moved to remand, arguing that the District Court lacked subject matter jurisdiction. Dkt. 314, Ex. C. Defendants countered that the Fund's claims were subject to complete federal preemption under ERISA. Dkt. 86.

7. The District Court remanded. *Id*. It noted that although ERISA is "subject to exclusive federal court jurisdiction," a "federal defense does not confer subject matter jurisdiction," and defendants were "vague as to which counts they believe are preempted." *Id*. at 3-5. The District Court concluded that "I do not think that Defendants' potential liability exists only because of their administration of ERISA-regulated plans" and "remand is proper because Plaintiff's claims are not completely preempted . . ." *Id*. at 4-5 ("To the extent that Plaintiff raises a claim under ERISA at a later point . . . the Court of Chancery would not have jurisdiction over such a cause of action.").

8. After the remand, the parties cross-moved for summary judgment before this Court. In spring and summer of 2024, after briefing and oral argument, the Court entered judgment in favor of the Fund on its claims for breach of contract and declaratory and injunctive relief. It concluded that defendants violated the partnership and management

---

[1] Defendants also pursue advancement from third-party defendant UnumX under UnumX's Articles of Association. The ruling from which defendants seek interlocutory appeal does not address UnumX, as it was not the subject of the ERISA defense. Dkt. 40; Dkt. 382; Dkt. 383.

3

agreements by retaining after their removal nearly $10 million and large amounts of information belonging to the Fund.  Dkt. 133; Dkt. 214.

9.  The Court also ruled on defendants' motion on their counterclaims.  It concluded that the partnership and management agreements' plain, broad language entitled defendants to advancement from the Fund.  Dkt. 227.  As to the Fund's ERISA defense, however, the Court noted the conclusions in the remand decision.  *Id.* at 35.  It determined that the parties still had not "satisfactorily articulate[d] why this Court should or even can address the contours of ERISA."  *Id.* at 36.  Consistent with defendants' position, the Court ruled on the counterclaims solely as a matter of Delaware law, while preserving the parties' ability to litigate the ERISA issues in a plenary federal action.  *Id.*[2]

10.  In late 2024, the Fund filed a complaint for declaratory and injunctive relief and an emergency motion for injunctive relief in District Court.  Dkt. 260 at Exs. A-B. Defendants moved to dismiss.  The parties again contested the District Court's jurisdiction, albeit this time reversing the positions they had previously taken in connection with the remand ruling.  *See generally* Dkt. 314, Exs. GG & HH.

11.  The Fund also filed an application for certification of interlocutory appeal of this Court's decision to grant summary judgment on defendants' counterclaims under Delaware law.  Dkt. 252.  The Fund further moved this Court to stay any obligation to make advancement payments pending its federal emergency application and state interlocutory appeal.  Dkt. 260.

---

[2] The Fund thereafter filed a motion for reargument. The Court denied the motion except as to a discrete issue related to UnumX.  Dkt. 218; Dkt. 242.

4

12. This Court granted the motion to stay pending the District Court's decision on the Fund's emergency application. Dkt. 275. The Court denied the Fund's application for certification of interlocutory appeal. Dkt. 270. In both decisions, the Court noted that if the District Court declined to rule on the ERISA issue, then this Court would decide the issue. The Fund thereafter withdrew its interlocutory appeal. Dkt. 308; Dkt. 309.

13. In January 2025, the District Court denied the Fund's emergency application. Dkt. 311, Ex. HH. It concluded that there was no irreparable harm as "one way or another the affirmative defense is going to be decided before the advancement takes place, assuming that the advancement ever takes place." *Id*. at 50. On jurisdiction, the District Court noted both sides' reversal of positions as well as Third Circuit precedent "that declaratory and injunctive suits . . . are basically raising federal issues as a defense . . ." *Id.* at 10, 50-51.[3] It gave the Fund a chance to decide if it wanted to pursue the matter further. *Id.* at 51-52.[4] The parties thereafter agreed to a stipulation of dismissal. Dkt. 314, Ex. II.

14. In February, defendants moved for enforcement of advancement in this Court. Dkt. 311. In March, the Fund moved for partial summary judgment on its ERISA defense. Dkt. 336. The Fund argued that the Third Circuit in *Secretary United States*

---

[3] *Id.* at 51 ("I don't think I have the jurisdiction.").

[4] *Id*. at 52 ("[I]f I have to decide the subject matter jurisdiction question, I probably need to work through all of this material that Defense Counsel has brought up today . . . it's not fully briefed. So I'm going to deny the [TRO] motion and you all can decide . . . what you want to do about the motion to dismiss.").

*Department of Labor v. Koresko*[5] interpreted ERISA § 1110[6] to render void contractual provisions that entitle ERISA fiduciaries to use plan assets to advance their legal costs. Defendants pointed to a circuit split over that interpretation. They further argued that § 1110 does not apply because the Fund has not asserted any claim for breach of fiduciary duties under ERISA § 1132.[7] The parties were unable to find precedent in which a litigant asserted § 1110 as a defense to state law claims in state court and again argued over jurisdiction.

15.     In May, the Court granted the Fund's motion for partial summary judgment and denied defendants' motion for enforcement ("ERISA Ruling"). Dkt. 383.[8] On jurisdiction, the Court expressed continued concern about whether it had subject matter jurisdiction. Dkt. 383 at 5-6. It noted how—after reviewing U.S. Supreme Court precedent cited in the briefing, as well as case law from the Delaware Supreme Court[9]—that concern

---

[5] 646 F. App'x 230 (3d Cir. 2016).

[6] 29 U.S.C. § 1110 ("any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.").

[7] 29 U.S.C. § 1132.

[8] The Court vacated the implementing orders it entered in connection with its prior ruling granting defendants' motion for summary judgment on their counterclaims under Delaware law. Dkt. 382.

[9] *See Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004); *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000); *Asbestos Workers Loc. Union No. 42 Welfare Fund v. Brewster*, 940 A.2d 935 (Del. 2007); *see also Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80 (2020); *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001); *California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316 (1997); *D.C. v. Greater Washington Bd. of*

6

extended to the Fund's causes of action. Dkt. 383 at 5-6. The Court concluded, however, that because the District Court had presided over the case twice and previously ruled that ERISA did not completely preempt the dispute, it would proceed to address the motions on the merits. *Id.* at 6.

16. The Court concluded that, under the Third Circuit's interpretation in *Koresko*, ERISA § 1110 rendered void the provisions in the partnership and management agreements entitling ERISA fiduciaries Chen Delano and Patel to use plan assets to advance their legal costs in these circumstances. The Court noted how Delaware courts take their lead from the Third Circuit on other interpretations of federal statute and that it made sense to do so here too. *Id.* at 13-19.

17. The Court concluded that defendants' argument that the Fund had not asserted a cause of action under ERISA was unavailing. The Court determined that, because in these circumstances *Koresko* simply says agreements to front defense costs of ERISA fiduciaries from ERISA fund assets are void, the relevant provisions enabling defendants to obtain advancement from the Fund's ERISA assets here were invalid at the time they were entered into. *Id.* at 21.

18. Finally, the Court noted how ERISA established standards of conduct for plan fiduciaries to protect ERISA beneficiaries and make their benefits more secure, including by prohibiting fiduciaries from using plan assets for their own personal benefit

---

*Trade*, 506 U.S. 125 (1992); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983).

7

outside the proper performance of their duties and requiring them to act in accordance with a plan's governing documents. The Court determined that—because it had already ruled that defendants breached the Fund's governing documents by improperly retaining Fund assets, and because evidence shows that defendants do have the ability to repay any sums advanced—it would be hard to conclude that Congress intended ERISA to permit advancement here. *Id*. at 19-20.

19. Around the same time, the Fund amended its complaint to assert a damages claim for pre-judgment interest. Dkt. 317; Dkt. 339. Defendants moved to dismiss the amended complaint. Dkt. 340; Dkt. 341. Defendants rely on the ERISA Ruling to argue that ERISA preempts the Fund's claims. They also argue, *inter alia*, that the Fund's claim for prejudgment interest fails due to waiver and application of Cayman Islands law. Dkt. 384.

20. On June 11, defendants filed a motion for partial final judgment under Rule 54(b). They request the ERISA Ruling be made final under Rule 54(b) so that they can proceed with an appeal of the advancement ruling. Dkt. 386.

21. Two days later, defendants filed the present application for certification of interlocutory appeal of the ERISA Ruling. Dkt. 388. The Fund opposed the application. Dkt. 390.

NOW, THEREFORE, the Court, having carefully considered defendants' application and the parties' arguments, IT IS HEREBY ORDERED, this 30th day of June 2025, as follows:

1. Supreme Court Rule 42 governs certification of interlocutory appeals. "Interlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources." Supr. Ct. R. 42(b)(ii).

2. To certify a Rule 42 application, two hurdles must be cleared. *Elutions Cap. Ventures S.A.R.L. v. Betts*, 2022 WL 17075692, at *3 (Del. Ch. Nov. 18, 2022), *appeal refused*, 289 A.3d 1274 (Del. 2023) (TABLE). The order must have "decide[d] a substantial issue of material importance that merits appellate review before a final judgment"; and there must be "substantial benefits" to granting the application that "will outweigh the certain costs that accompany an interlocutory appeal." *Id.*; Supr. Ct. R. 42(b)(i)-(ii).

### "Substantial Issue" Requirement

3. "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to collateral matters." *Sprint Nextel Corp. v iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008) (quoting *Casteldo v. Pittsburgh-Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973)). "As commonly articulated, the substantial-issue requirement is met when a decision speaks to the merits of the case." *Kulak v. On*, 2024 WL 3178228, at *2 (Del. Ch. June 26, 2024), *appeal dismissed*, 320 A.3d 236 (Del. 2024) (TABLE).[10]

---

[10] *But see id.* ("In practice, however, the Supreme Court has accepted interlocutory appeals of non-merits-based questions that implicate significant issues under Delaware law." (citing *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *1 n.9 (Del. Ch. Oct. 3, 2022), *appeal refused*, 285 A.3d 1205 (TABLE)).

9

4.      In the ERISA Ruling, the Court rendered a determination on entitlement to advancement when it granted the Fund's motion for partial summary judgment on defendants' counterclaims and denied defendants' motion for enforcement. That decision "sp[oke] directly to the merits of [defendants' counter]claims, not collateral matters." *Sider v. Hertz Glob. Holdings, Inc.*, 2019 WL 2501481, at \*4 (Del. Ch. June 17, 2019). Neither party disputes this requirement. The Court will therefore proceed to analyze the factors in Rule 42(b)(iii).[11]

**Rule 42(b)(iii) Factors**

5.      Rule 42(b)(iii) contains eight factors. They include whether

(A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice.

The Court addresses the factors in turn.

---

[11] *See Norwest Venture Pr.'s XIV, LP v. Andreacchi*, 2024 WL 4665414, at \*2 (Del. Ch. Nov. 4, 2024) ("If the substantial-issue requirement is met, then the court must analyze eight factors to determine whether 'there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal.'") (quoting Supr. Ct. R. 42(b)(ii)).

6.      **Factor A**.  The ERISA Ruling involves a question of law resolved for the first time in Delaware:  Whether, in a state court action involving what are asserted to be state law claims, an affirmative defense asserted by an ERISA-regulated fund under ERISA § 1110 bars state law counterclaims asserted by the fund's ERISA fiduciaries under the fund's governing documents for advancement of their legal expenses out of the fund's assets.  Adding to the novelty of this question, the ERISA fiduciaries seek advancement for expenses they incurred in an action where the Court adjudicated them to have breached the Fund's governing documents by withholding substantial amounts of money and information belonging to the Fund.  Neither the parties nor this Court could locate case law addressing this particular situation.  The Court concludes that Factor A is met.

7.      **Factor B**.  Because the question of law discussed in Factor A involves a novel question which no other court has addressed, there are not any decisions of the trial courts that are conflicting upon that exact question.  But there are significant aspects of the ERISA Ruling which implicate conflicting federal court decisions.  For example, as illustrated by the parties' briefing ahead of the ERISA Ruling, the federal courts are split on whether ERISA § 1110 prohibits advancement absent a determination of liability for breaches of ERISA fiduciary duties.  Dkt. 312; Dkt. 336.[12]  Also, the ERISA Ruling arguably has tension with the District Court's comments and remand ruling in this matter (*see* Factor

---

[12] *Compare Koresko*, 646 F. App'x 230 (citing *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009)); *Perelman v. Perelman*, 919 F.Supp.2d 512 (E.D. Pa. 2013), *aff'd*, 793 F.3d 368 (3rd Cir. 2015); 29 C.F.R. § 2509.75–4), *with Moore v. Williams*, 902 F. Supp. 957 (N.D. Iowa 1995); *Lawrence v. Potter*, 2018 WL 3625329 (D. Utah July 30, 2018); *Leigh v. Engle*, 669 F. Supp. 1390 (N.D. Ill. 1987), *aff'd*, 858 F.2d 361 (7th Cir. 1988), *cert. denied*, 489 U.S. 1078 (1989); *In re Volpitto*, 455 B.R. 273 (Bankr. S.D. Ga. 2011).

(D) below), as well as with case law stating that Delaware policy favors recoupment at the indemnification stage as the remedy for improperly advanced fees. *See, e.g.*, *Sider*, 2019 WL 2501481, at *3. Here, as a result of the ERISA Ruling and its application of Third Circuit case law, the Court vacated its order that the Fund make advancement payments before the recoupment phase.

8. **Factor C**. The relevant question of law does not relate to the constitutionality, construction, or application of a statute of this State. This factor weighs against granting defendants' application.

9. **Factor (D)**. Both parties have been disputing this Court's subject matter jurisdiction in one way or another since early 2024, including by reversing their positions on jurisdiction. Further, this Court has expressed concerns about whether it has subject matter jurisdiction, including after the remand ruling and with the benefit of the parties' briefing on their motions for enforcement and summary judgment.[13] When the Court moved beyond those concerns in its ERISA Ruling to consider and rule on the Fund's ERISA defense, it sustained the controverted jurisdiction of the trial court. The Court concludes Factor (D) weighs in favor of granting defendants' application.

10. **Factors (E) & (F)**. The ERISA Ruling vacated a judgment of the Court on a significant issue: this Court's ruling granting defendants' motion for summary judgment on their advancement counterclaims under Delaware law. Dkt. 382. Also, a review of the interlocutory order may substantially reduce further litigation or terminate this action as it

---

[13] The novelty of the relevant question of law (as discussed in Factor (A)) clouds the jurisdictional question.

12

relates to the Fund. If the Delaware Supreme Court were to conclude, for example, that jurisdictional preemption applies, then it may resolve substantially all of defendants' pending motion to dismiss; the need for any further *Fitracks* procedures[14] or indemnification proceedings involving the Fund; and any merits appeal of this Court's judgment in favor of the Fund on the counts in its original complaint. These considerations weigh in favor of granting the application.

11. **Factor (G)**. The ERISA Ruling did not vacate the Court's ruling granting defendants' motion for summary judgment on advancement from UnumX. *See* Dkt. 40; Dkt. 382; Dkt. 383. Therefore, granting defendants' application on the ERISA Ruling may not obviate further *Fitracks* procedures or indemnification proceedings involving UnumX to the extent such proceedings are required. The Court concludes that this factor weighs against granting the application—but only slightly given that interlocutory review may substantially reduce further litigation or terminate this action as it relates to the Fund (*see* Factors E and F).

12. **Factor (H)**. A review of the ERISA Ruling may serve considerations of justice. On the one hand, "Delaware courts recognize a public policy in favor of promptly resolving issues relating to advancement of defense costs." *HLTH Corp. v. Axis Reinsurance Co.*, 2009 WL 3326625, at *2 (Del. Super. Ct. Sept. 30, 2009) (internal citations omitted), *aff'd in part, and rev'd on other grounds*, 993 A.2d 1057 (Del. 2010). "This Court construes advancement provisions broadly to effectuate Delaware's policy of

---

[14] *See Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch. 2012).

13

providing temporary relief from substantial expenses." *Kerbs v. Bioness Inc.*, 2022 WL 3347993, at *3 (Del. Ch. Aug. 15, 2022) (internal citations and quotations omitted). Here, reaching a resolution on defendants' advancement counterclaims has taken far longer than a run-of-the-mill advancement case. Also, defendants would have been entitled to advancement under the plain, broad language of the relevant agreements but for the Fund's successful ERISA defense.

13. On the other hand, Congress enacted ERISA to, among other things, provide stability and security to ERISA pensioners' investments. *See generally* 29 U.S.C. § 1001. Defendants' counterclaims for advancement from the Fund threaten non-party ERISA pensioners' investments as long as they remain pending. An appellate decision on the questions presented here will aid in providing stability and certainty for ERISA investors and the Delaware funds in which they invested on how their invested capital may be utilized by ERISA fiduciaries on a going-forward basis.

## Rule 42(b)(iii) Balancing

14. Rule 42 directs the trial court to balance the costs and benefits of granting an application for certification of interlocutory appeal. Supr. Ct. R. 42(b)(iii).[15] Here, after considering the above factors and assessing the most efficient and just schedule to resolve the case, the Court concludes that the likely benefits of interlocutory review outweigh the probable costs. As discussed, this case involves exceptional circumstances, as well as important competing policies between Delaware and federal law.

---

[15] *See also Envirokare Composite Corp., v. D&D Mfg., LLC*, 2024 WL 1528695, at *4 (Del. Ch. Apr. 9, 2024).

14

15.     Further, while defendants' motions for partial final judgment and to dismiss the Fund's amended complaint remain pending,[16] the Court concludes that resolving those motions now would be either inefficient, imprudent, or unnecessarily add to the already extraordinary procedural complexity of this matter.  Defendants seek entry of final judgment on their counterclaims against the Fund per the ERISA Ruling.  But, as the Fund points out,[17] the ERISA defense has arguably not been fully adjudicated yet because the pending motion to dismiss seeks to use that ruling to attack all of this Court's prior rulings as to the Fund.  Further, if defendants are, indeed, correct about jurisdiction or their reading of ERISA, then it would make sense for them to secure a definitive ruling from the Delaware Supreme Court now so that they can obtain advancement before its benefits are lost.  Defendants argue in their motion to dismiss that the Fund has waived its prejudgment interest claim; and that, alternatively, Cayman Islands law applies to bar that claim.  But it would be imprudent for this Court to decide those questions now given the pending application for interlocutory review, which argues that ERISA divests this Court of

---

[16] *See Stein v. Blankfein*, 2019 WL 3311227, at *1 (Del. Ch. July 23, 2019) ("[T]he purpose of Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."), *appeal refused*, 214 A.3d 943 (Del. 2019) (TABLE).

[17] *See* Dkt. 391 at 8-9.

jurisdiction.[18] If the Delaware Supreme Court ultimately agrees with defendants, then this Court would not have the power to preside over the case to resolve those arguments.[19]

16.    The Court concludes that the Rule 42(b)(iii) factors and cost-benefit analysis weigh in favor of interlocutory review.  Accordingly, and for the foregoing reasons, the application is GRANTED.

IT IS SO ORDERED.

/s/ **Nathan A. Cook**
Vice Chancellor Nathan A. Cook

---

[18] The posture of this case has also changed significantly since the Court's order denying the Fund's application for certification of interlocutory appeal in that the federal action is no longer pending, and the parties have since extensively briefed the ERISA and jurisdictional issue.

[19] Further, relief cannot be granted on the counts in the amended complaint until defendants' motion to dismiss is decided.